

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-2007

# Winata v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3012

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Winata v. Atty Gen USA" (2007). *2007 Decisions.* Paper 170.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/170

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-3012
_____

YENYTA WINATA,

Petitioner

v.

Attorney General of the United States,

Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A96-266-157)
Immigration Judge:   Hon. R.K. Malloy
_____

Submitted Under Third Circuit LAR 34.1(a)
November 8, 2007

Before: SCIRICA, *Chief Judge*, AMBRO and JORDAN, *Circuit Judges*

(Filed November 30, 2007 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge.*

Yenyta Winata ("Winata") petitions for review of the Board of Immigration Appeals' ("BIA") denial of her claim for withholding of removal. We will deny the petition.[1]

## I. BACKGROUND

Winata is a citizen of Indonesia and ethnically Chinese. She entered the United States in April of 2001. Approximately two years later, she filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Her claims are based on two incidents that occurred while she was living in Indonesia. First, in 1980, after some riots in her hometown that pitted ethnic Indonesians against ethnic Chinese, an ethnically Indonesian man killed Winata's four-year-old brother. The assailant later told police that he had killed the boy out of anger about the riots and, when he saw Chinese people, he was overtaken by the devil. The man received a two year jail sentence, although Winata believes he did not serve his full sentence.

The second incident occurred in December 2000, when three ethnic Indonesians attempted to rob Winata and her boyfriend. Like Winata, her boyfriend was also ethnically Chinese. During the confrontation, one of the men stabbed Winata's boyfriend.

---

[1] We have jurisdiction to review a final decision of the BIA under 8 U.S.C. § 1252(a). We must sustain the BIA's decision if it is supported by substantial evidence. *Jarbough v. Attorney General of U.S.*, 483 F.3d 184, 191-92 (3d Cir. 2007). This is a highly deferential standard of review. The BIA's decision "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

When Winata and her boyfriend went to the hospital, the hospital staff did not treat the boyfriend immediately, and he eventually bled to death. Although the police investigated the murder, Winata does not know if they ever caught the men responsible.

An Immigration Judge ("IJ") held a hearing on Winata's application on February 25, 2005, and denied all of her claims for relief. Winata filed a timely appeal to the BIA, and the BIA affirmed. It denied Winata's asylum claim because she filed the claim more than one year after entering the United States. It denied her withholding of removal claim because the two incidents in Indonesia did not establish that she would likely be persecuted if she returned to Indonesia. It denied her claim for relief under the CAT because she had not shown that she would be tortured if she returned to Indonesia.

## II.    DISCUSSION

Winata limits her appeal to the BIA's denial of her claim for withholding of removal. To qualify for withholding of removal, an applicant must demonstrate that she faces a "clear probability of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(42)(A); *INS v. Stevic*, 467 U.S. 407, 429-30 (1984); *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991). We have explained that persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993).

Winata argues that she faces a clear probability of persecution on account of her race or her membership in a particular social group if she returns to Indonesia. According to Winata, she is eligible for withholding of removal since her brother was killed because of his race and the government did little to bring the murderer to justice. She further argues that she is eligible for withholding of removal because hospital personnel did not treat her boyfriend in time to prevent his death and the police did not catch her boyfriend's killer.

We conclude that the BIA's decision denying Winata's withholding of removal claim is supported by substantial evidence. Although the deaths of Winata's young brother and her boyfriend are terrible to contemplate, they occurred over twenty years apart and appear to have been the result of random acts of violence. Winata's outrage at the brief sentence and early release of her brother's killer is more than understandable, but to conclude that the sentence and release were racially motivated would be speculative and would, in any event, be only obliquely relevant to Winata's assertion that she would be the target of persecution if she returned to Indonesia. Similarly, nothing in the record indicates that the hospital staff's failure to treat Winata's boyfriend in time to prevent his death was motivated by Winata's, or her boyfriend's, race or group membership. Finally, Winata testified only that she did not know if her boyfriend's killer was caught, and nothing in the record indicates that any failure to catch the killer was due to race or membership in a particular social group.

Because the BIA's decision is supported by substantial evidence, we must deny the petition for review.